JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Selena Alicia Coronado, | No. CV-04-1947-PHX-DGC (BPV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Plaintiff Selena Alicia Coronado filed this civil rights action under 42 U.S.C. § 1983 against thirteen officials from the Arizona Department of Corrections (ADC). Dkt. #1. Upon screening the complaint, the Court dismissed Defendants Dora Schriro, James Baird, Terry Stewart, Robert Jones, Bennie Rollins, and Charles Ryan. Dkt. #3. Before the Court are a motion to dismiss and a motion for summary judgment filed by Defendants Dr. Dale Palmer, Larry Clausen, and Barbara Ribbens. Dkt. ##45-46. Plaintiff has filed a single response to both motions, and Defendants have replied. Dkt. ##53, 55. The Court will deny the motion to dismiss and grant the motion for summary judgment. The Court will dismiss the claims against the remaining four Defendants – CRN Hendrix, Nurse Practitioner Sanders, Dr. Tuttle, and Mary Hennessy – for failure to serve.

**I.  Background.**

In July 2002, Plaintiff was in an automobile accident that resulted in numerous broken bones and required pins to be put in her right shoulder and both wrists, as well as a metal plate in her right forearm. Dkt. #47, Ex. A at 16:9-17:3, 19:21-20:19. Shortly thereafter,

JDDL

Plaintiff arrived at the ADC Perryville complex and was housed in the Lumley Unit. Dkt. #1 at 5. In early 2003, she became ill and suffered from constant vomiting, high fever, and weight loss. *Id.* Plaintiff alleged that contrary to the information provided to her family by Warden Hennessy, Plaintiff was not seen by a doctor and was not receiving care.

Plaintiff spoke to Deputy Warden Ribbens, who sent Plaintiff to the medical unit. *Id.* A nurse from the Santa Maria Unit who happened to come to Lumley provided Plaintiff with antibiotics for a staph infection she had developed. *Id.* Plaintiff alleged that Hendrix – a nurse in the Lumley Unit – insisted there was no infection and that Plaintiff did not have pins in her wrist. Hendrix stated that Plaintiff had wires. *Id.* Yet, Plaintiff claimed that the infection was obvious and her wrist was swollen and painful. A short time later the pin in her wrist pushed its way through her skin and then popped out. *Id.* Plaintiff was taken to the Maricopa Medical Center (MMC) where Dr. Bodell informed her that her wrist had been set improperly and she needed surgery immediately. *Id.* Plaintiff did not get surgery; she was given a splint, and in October 2003 Dr. Rodriguez prescribed Naproxen for pain management. *Id.* When the Naproxen was unsuccessful at alleviating pain, Plaintiff was put on Indomethacin, and then several other types of antibiotics. *Id.*

In early 2004, the two pins in Plaintiff's right shoulder pushed themselves through her skin thereby causing a "big gash" from which puss drained. *Id.* at 5A. Plaintiff again became ill and suffered from vomiting, high fever, and weight loss. *Id.* Plaintiff lost her job due to work absences. The accumulating puss caused her arm to swell up and she was placed on antibiotics for a staph infection only after "Hendrix and [Nurse Practitioner] Sanders saw fit." *Id.* Plaintiff alleges that Hendrix and Sanders refused to refer Plaintiff to a doctor despite her constant pain and requests that she be taken to the emergency room. *Id.* Plaintiff further alleges that Hendrix and Sanders denied her access to medical care and denied medication for an apparent infection. *Id.* at 2A. She also alleges that Sanders improperly set Plaintiff's wrist. *Id.* Hendrix and Sanders were named in both of Plaintiff's counts

concerning medical care (Counts II and III).  *Id.* at 5A-6.[1]

Plaintiff claims that after September 2002 her pain became progressively worse, a fact she reported to Hendrix, Sanders, Dr. Palmer, Dr. Tuttle, Facility Health Administrator Clausen, and Deputy Warden Ribbens.  *Id.* at 6; Dkt. #47 ¶ 4.  Plaintiff alleges in Count III that Palmer and Tuttle refused to provide medical treatment after requests from Plaintiff and her family.  Dkt. #1 at 2A-2B, 6-6A.  Plaintiff alleges in Counts II and III that Ribbens and Hennessy failed to investigate the delay of surgery or refer Plaintiff to a doctor after they were made aware of the problem.  *Id.* at 2A-2B, 5-6A.

In the summer of 2004, Plaintiff was housed at the Pima County Jail for 2-3 weeks to attend a court hearing.  Dkt. #47, Ex. A at 73:6-74:9.  During that time she was treated by Dr. Austin.  *Id.* at 74:10-15.  Plaintiff alleges that upon her return to Perryville on July 6, 2004, Dr. Austin called the prison to inform them that Plaintiff needed to be seen immediately because a pin had come out at the jail and another was likely to come out soon.  Dkt. #1 at 6A.  Two days later, Plaintiff talked to Clausen about a grievance and explained how sick she had become from other pin problems.  *Id.* at 6-6A; Dkt. #47 ¶ 6.  In regard to Dr. Austin's comments, Clausen told Plaintiff that "if it wasn't in writing, it didn't mean a thing."  Dkt. #1 at 6A.  Plaintiff claims that she also spoke to Clausen on several other occasions about her complaints, but all Clausen would tell her was that he was not a doctor.  *Id.* at 6; Dkt. #47 ¶ 5.  Plaintiff alleges that Clausen, who is named in both counts, failed to ensure that she received proper medical care.  Dkt. #1 at 2, 5-6A.

Plaintiff required assistance when making her bed, getting dressed, bathing, and using the toilet facilities.  *Id.* at 6.  Plaintiff alleges that the pain medication given to her was inadequate, which kept her from sleeping most nights.  *Id.* at 5A.  She claims that she spoke and wrote to everyone she could think of, yet there was no resolution and she remained in pain and in constant fear of losing her arm.  *Id.* at 6A, 5A.

///

---

[1]The Court dismissed Count I on screening for failure to state a claim against a named Defendant.  Dkt. #3.

## II. Defendants' Motion to Dismiss.

Defendants argue that Plaintiff's claims should be dismissed for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Dkt. #45. The form civil rights complaint that Plaintiff filed includes three questions regarding administrative remedies and provides boxes for the plaintiff to check either "yes" or "no." These questions are: (1) Are remedies available at your institution? (2) Did you submit a request for relief on this count? (3) Did you appeal your request for relief to the highest level? Dkt. #1 at 5-6. Below these questions there is a space provided for Plaintiff to explain why she may not have filed a request for relief or appealed it to the highest level. *Id.* For both counts, Plaintiff checked "yes" on the first two questions and left the third question unanswered. *Id.* She did not provide any explanation for why the last question for each count was unanswered. Defendants argue that these responses amount to a concession by Plaintiff that she did not exhaust her available administrative remedies and her action should therefore be dismissed. To support their motion, Defendants have submitted a copy of the Inmate Grievance Procedure, Policy DJ-3. Dkt. #45, Ex. A.

The Court issued an order informing Plaintiff of her obligation to respond and the evidence necessary to rebut Defendants' arguments. Dkt. #48. In her response, Plaintiff argues that she did exhaust the grievance system, but that she was not given any of her paperwork when she was transferred to a new unit. Dkt. #53 at 2. She claims that she requested copies of her paperwork from Clausen, the Central Office, and her Correctional Officer (CO) III Gomez, but they did not respond. *Id.* Attached to her response are copies of numerous grievances from 2003 and 2004 addressing the surgery that was scheduled but never received, the pins popping out of her wrist and shoulder, the unbearable pain, and repeated requests for proper medical treatment. *Id.* Attachs. 1-9.[2] Plaintiff's evidence includes documents showing that Plaintiff filed an Inmate Grievance Appeal on her complaint regarding the failure to receive surgery and the continued pain she was suffering.

---

[2]Plaintiff's response also includes other grievances, grievance appeals, and responses from 2005 and 2006 regarding the treatment of her arm and wrist. Dkt. #53, Attachs. 13-21.

- 4 -

1  *Id.* Attachs. 10-11 (Case No. B02-04404)).

2  In their reply, Defendants argue that Plaintiff did not complete the grievance process 3 as to her complaints against Deputy Warden Ribbens. Dkt. #55. They point to an inmate 4 letter Plaintiff filed which they contend refers in part to Plaintiff's encounter with Ribbens 5 and forms the basis of the Plaintiff's allegations against Ribbens. *Id.* Ex. A, Attach. 1. 6 Defendants assert that because Plaintiff did not appeal this specific inmate letter to a formal 7 grievance, she did not exhaust remedies as to Ribbens. *Id.* at 3-4.

8  Defendants admit that their investigation of Plaintiff's grievances revealed "a 9 completed grievance process generally relating to Coronado's medical treatment and 10 scheduled surgeries." *Id.* at 4. But Defendants argue that these grievances do not constitute 11 exhaustion against Palmer and Clausen because Plaintiff failed to comply with the ADC 12 grievance policy requiring her to file an inmate letter with the assigned CO III within 10 13 workdays of the action that caused the complaint. *Id.* (citing Dep't Order (DO) 802.08 § 14 1.1). Defendants note that Plaintiff filed her inmate letter initiating this completed grievance 15 process on April 13, 2004; thus, for this completed grievance process to apply to Palmer and 16 Clausen, they would have had to engage in some actionable conduct relating to Plaintiff's 17 medical claim within the 10 workdays before the inmate letter. *Id.* at 4. Within 10 workdays 18 prior to Plaintiff's inmate letter, Clausen received a telephone call regarding Plaintiff's 19 medical care and Palmer examined Plaintiff; however, both Defendants argue that their 20 conduct during this time frame did not constitute action that caused her complaint "as 21 required by DO 802.08 § 1.1." *Id.* at 4-5.

22  Finally, Defendants move to dismiss Plaintiff's entire complaint if the Court finds that 23 some but not all of her claims have been exhausted. Dkt. #55 at 5. They put forth this 24 argument to preserve it in case the Supreme Court adopts the "total-exhaustion rule" in its 25 forthcoming ruling in two cases addressing this issue. *Id.* at 6 (citing to *Jones v. Bock*, 05-26 7058, consolidated with *Williams v. Overton*, No. 05-7142, *cert. granted* (U.S. Mar. 6, 27 2006)).

28  / / /

**A.    The PLRA Exhaustion Requirement.**

A prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies are exhausted. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). She must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

This Circuit has made clear that § 1997e(a) "is not a jurisdictional requirement that the plaintiff must plead and establish. Instead § 1997e(a) establishes an affirmative defense, waived if the defendant does not raise it." *Lira v. Herrera*, 427 F.3d 1164, 1171 (9th Cir. 2005). The Supreme Court has affirmed this proposition. *Jones v. Bock*, 127 S. Ct. 910, 921 (2007) (stating that the "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints").

Defendants bear the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. *Id.* at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

**B.    Analysis.**

**1.    Concession to Nonexhaustion.**

As stated, Defendants bear the burden of proving failure to exhaust, and therefore must demonstrate that there were remedies available to Plaintiff. *See Wyatt*, 315 F.3d at 1119; *Brown*, 422 F.3d at 936-37. Although lack of exhaustion is an affirmative defense, a claim may be dismissed if it is clear from the record that the plaintiff concedes failure to exhaust administrative remedies. *Wyatt*, 315 F.3d at 1120.

1  Plaintiff's opposition to Defendants' motion and her evidence demonstrating that she
2  appealed a grievance to the highest level show that she has not conceded nonexhaustion.
3  Defendants also admit that Plaintiff exhausted her claims about medical treatment and
4  scheduled surgeries. Dkt. #55 at 4.

### 2. Defendant Ribbens.

Defendants attempt to prove failure to exhaust as to Defendant Ribbens by proffering the copy of Plaintiff's April 9, 2003 inmate letter and the response by Ribbens. Dkt. #55, Ex. A. Defendants argue that this inmate letter response is the only connection that Ribbens had to any of Plaintiff's grievances and, because this response was not appealed, Ribbens should be dismissed for lack of exhaustion.

To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint. *Porter*, 534 U.S. at 525 (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"). The purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a specific official that he or she may be sued. *See Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). The inmate letter form and the inmate grievance form advise the inmate to describe the problem or grievance; there are no instructions to name individual officials. Dkt. #55, Ex. B, Attach. 1. Plaintiff's grievances were sufficient to provide the prison with a fair opportunity to address the problem and to put the prison on notice of her potential claim. Moreover, Ribbens was aware of the problem Plaintiff was having in obtaining proper treatment. Dkt. #47, Ex. D, Ribbens Aff. ¶¶ 6, 8, 10. The Court finds that by completing the grievance process and alerting officials to the problem giving rise to this suit, Plaintiff availed herself of the administrative process as to claims regarding her treatment at the prison, including those against Ribbens. *See Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005). Defendants' request for dismissal of the claims against Ribbens is denied.

### 3. Defendants Clausen and Palmer.

As explained above, Plaintiff did not have to specifically name in her grievances the

officials that may be sued. Plaintiff's grievance sufficiently alerted prison officials, including Clausen and Palmer, to the problem and Plaintiff's potential claim. In addition, both Clausen and Palmer were well aware of Plaintiff's medical problem. Clausen personally responded to most of Plaintiff's grievances and grievance appeals. *See* Dkt. #55, Ex. B, Attach. 1. Palmer attested that he was one of the physicians Plaintiff saw during the relevant period of time that she alleges medical personnel made her condition worse. Dkt. #47, Ex. B, Palmer Aff.

Finally, Defendants' assertion that Plaintiff failed to comply with the deadlines set forth in the grievance policy is unpersuasive. Dkt. #55 at 4. Prison officials responded to Plaintiff's inmate letter concerning her inadequate medical treatment and to all of her subsequent appeals. Dkt. #55, Ex. B, Attach. 1. Not a single response by prison officials mentions a failure to comply with the procedural rules. If any procedural deficiency existed, it was waived by Defendants.

### 4. Total Exhaustion.

Defendants' remaining argument for dismissal for nonexhaustion was rendered moot with the Supreme Court's decision in *Jones v. Bock*, 127 S. Ct. 910 (2007), which rejected the total exhaustion rule. Even so, this argument would not apply because the Court does not find that either of Plaintiff's claims were unexhausted. Defendants' motion to dismiss will be denied.

## III. Defendants' Motion for Summary Judgment.

Defendants move for summary judgment on the grounds that (1) Defendants were not deliberately indifferent to Plaintiff's serious medical needs, (2) Defendants are entitled to qualified immunity from suit, and (3) Plaintiff is not entitled to injunctive relief. Dkt. #46. The Court informed Plaintiff of her obligation to respond and the requirements for opposing the motion as set forth in Rule 56 of the Federal Rules of Civil Procedure. Dkt. #49. Plaintiff has responded that Defendants were in fact deliberately indifferent to her medical needs by failing to treat her, which resulted in staph infections and the loss of the use of her arm. Dkt. #53. Defendants argue that Plaintiff failed to comply with the Local Rules of

1  Civil Procedure because she failed to submit a separate statement of facts, and they contend
2  that Plaintiff failed to demonstrate that there is a genuine issue for trial. Dkt. #55.[3]

### A. Summary Judgment Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Eighth Amendment.

States are prohibited by the Eighth Amendment from incarcerating inmates in conditions that constitute cruel and unusual punishment. Pursuant to this obligation, state officials who act with deliberate indifference to an inmate's serious medical needs are liable in a § 1983 action. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

/ / /

---

[3] To the extent that Defendants seek summary judgment for Plaintiff's failure to comply with Local Rule of Civil Procedure 56.1, their request is denied. *See* Dkt. #55 at 7. Because Plaintiff did not submit a separate statement of facts, Defendants' statement of facts is deemed undisputed.

A state prison official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, to establish deliberate indifference, a plaintiff must establish that the alleged harm was "sufficiently serious" and that the official acted with a "sufficiently culpable state of mind." *Id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 302-3 (1991)). Mere negligence or medical malpractice does not establish a sufficiently culpable state of mind. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). But a prisoner does not have to prove that he was completely denied medical care in order to demonstrate deliberate indifference. *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000). Deliberate indifference may be shown when an official denies, delays, or intentionally interferes with treatment or by the way that a medical professional provides care. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A difference of medical opinion is insufficient to establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

In cases involving complex medical issues where a plaintiff contests the type of treatment she received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. *See Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless Plaintiff can provide expert evidence that the treatment she received equated with deliberate indifference, thereby creating a material issue of fact, summary judgment should be entered for Defendants.

**C.   Analysis.**

**1.   Serious Medical Need.**

Defendants argue that Plaintiff has not shown that she had a serious medical need. They contend that she "acknowledged [in her deposition] that no medical provider advised

her that her condition presented a substantial risk of serious physical harm." Dkt. #47 ¶ 30 (citing Ex. A at 115:19-118:13). The Court cannot find such an acknowledgment in Plaintiff's deposition. Notably, Defendants themselves describe Plaintiff's injuries as "significant and complicated and . . . requir[ing] multiple diagnostic studies and specialist referrals." Dkt. #46 at 2.

Plaintiff has filed a verified complaint in this case. A verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Plaintiff states in her verified complaint that she suffered "constant pain" that was so severe she could not sleep most nights. Dkt. #1 at 5A. She also states that she could not use her wrist or move her fingers. *Id.* at 5. The copies of grievances submitted by Defendants reflect that Plaintiff complained about the immobility of her right arm for 2 years, and refer to the "excruciating pain" that she was in, and that she "continued to suffer from a great deal of pain." Dkt. #55, Ex. B, Attach. 1 (citing to grievance appeal responses dated 5/27/04 and 7/8/04). Because Defendants have failed to submit any evidence that refutes Plaintiff's claims that she suffered chronic and severe pain, the Court finds that Plaintiff had a serious medical need. *See McGuckin*, 974 F.2d at 1060; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (stating that the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment).

### 2. Deliberate Indifference.

#### a. Defendant Palmer.

In support of their argument that Palmer was not deliberately indifferent to Plaintiff's serious medical need, Defendants submit Palmer's affidavit. Dkt. #47, Ex. B. Palmer attested that when he first saw Plaintiff he requested an outside orthopedic consultation for her injuries. *Id.* ¶ 7. He stated that he continued to provide Plaintiff in-house treatment, to make outside consultation requests as needed, and to process administrative paperwork necessary for various treatments. *Id.* ¶¶ 21, 33, 42, 46, 74-75, 78-79, 94, 112, 115. Defendants also submit Plaintiff's deposition, in which she testified that she did not know

1 what attempts Palmer made to get a referral for surgery on her wrist. *Id.* Ex. A at 45:17-23.
2 Finally, the evidence demonstrates that Palmer prescribed medications to Plaintiff as
3 appropriate. *Id.* Ex. B, Palmer Aff. ¶¶ 43, 112-13, 115. Plaintiff's medical records, which
4 were attached to Palmer's affidavit, show that Plaintiff was regularly treated by other prison
5 medical providers between many of her appointments with Palmer. *Id.* ¶¶ 19, 41, 46, 48-53
6 60-78, 80-94. Palmer averred that the care he provided to Plaintiff was at all times within
7 the accepted standard of medical care. *Id.* ¶ 134. He further attested that his review of her
8 medical records and overall treatment lead him to conclude that Plaintiff received continually
9 good medical care, and her condition continues to improve. *Id.* ¶ 135.

10 Defendants have met their initial burden of establishing a lack of a triable issue of fact
11 as to deliberate indifference on the part of Palmer. Plaintiff cannot defeat summary judgment
12 by merely demonstrating "that there is some metaphysical doubt as to the material facts."
13 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

14 In her unsworn response, Plaintiff argues that Palmer neglected to provide her
15 "applicable care." Dkt. #53 at 1. She contends that had Palmer adequately treated her
16 medical condition, she never would have suffered from staph infections. *Id.* But she
17 provides no evidence to support this contention. Plaintiff further contends that statements
18 in Palmer's affidavit are incorrect. The statements to which she objects, however, concern
19 discrepancies that do not affect the issue of whether Palmer was deliberately indifferent to
20 Plaintiff's serious medical need.[4] Plaintiff's allegation that Palmer was deliberately
21 indifferent is not corroborated by any other testimony or other persuasive evidence. This
22 Circuit "has refused to find a 'genuine issue' where the only evidence presented is
23 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
24 1054, 1061 (9th Cir. 2002) (citations omitted).

25

26 [4]Specifically, Plaintiff objects to paragraph 4 – a summary of her medical history that
27 includes "a 10/96 gunshot wound to her right side, arm, and back" – and paragraph 41 – a
review of her medical records that states Plaintiff told a nurse who examined her wrist that
28 "I can move it now that I took the pin out." Dkt. #47, Ex. B, Palmer Aff. ¶¶ 4, 41. Plaintiff
asserts that these statements are false. Dkt. #53 at 1.

Palmer's conduct might constitute negligence. But indifference, negligence, or medical malpractice do not rise to the level of an Eighth Amendment violation. *Broughton*, 622 F.2d at 460 (citations omitted). On this record, a jury could not reasonably find that Palmer acted with deliberate indifference to Plaintiff's medical condition. The Court will grant summary judgment in favor of Defendant Palmer.

### b.    Defendant Clausen.

A prison official's involvement with the processing of an administrative appeal cannot constitute a constitutional violation. Dkt. #46 at 8 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). But prison officials who are not physicians may still be liable for deliberate indifference if they intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. When a prisoner attempts to hold a prison employee responsible for deliberate indifference, the prisoner must establish individual fault. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary judgment. *Id.* "The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Id.* She must prove that the specific prison official was deliberately indifferent and that this indifference was the actual and proximate cause of her injury. *Id.* State officials are subject to suit under § 1983 only if "they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987).

Defendants contend that because Clausen did not provide Plaintiff with medical care, but only responded to her administrative complaints, the claim against him should be dismissed because disagreement with responses to grievances do not rise to a constitutional violation. Dkt. #46 at 8. In his affidavit, Clausen states that he is not a physician and he does not provide any sort of treatment to patients at the prison. Dkt. #47, Ex. C, Clausen Aff. ¶ 4. Clausen further states that he responded to a number of inmate letters filed by Plaintiff, and that his responses were based on a review of ADC records and Plaintiff's medical reports *Id.* ¶¶ 2, 10-13, 16. Also, Clausen personally met with Plaintiff on two occasions to discuss the status of her medical treatment. *Id.* ¶¶ 14-15). As to the delay in surgery for Plaintiff,

1  Clausen averred that Maricopa Medical Center ("MMC") cancelled two surgeries that had
2  been set for June 23 and August 6, 2004. As a result, Clausen filed a Vender Deficiency
3  Report complaining about the abrupt and last minute cancellations of the surgery and stated
4  that due to MMC's conduct, "essential medical treatment [had] not been provided to offender
5  Coronado." *Id.* ¶ 17; Dkt. #54 Ex. I. In light of the problems with MMC, Clausen
6  transferred Plaintiff's care to St. Mary's Hospital in Tucson. Dkt. #47, Ex. C., Clausen Aff.
7  ¶ 17.

8  Defendants have met their burden of demonstrating the absence of a genuine issue of
9  material fact as to the claims against Clausen. *See Celotex*, 477 U.S. at 323. The burden
10 shifts to Plaintiff to set forth facts showing that a genuine dispute remains. Plaintiff claims
11 that Clausen violated her Eighth Amendment rights by not fully investigating the "incident
12 reports written by security officials on his medical staff's behavior towards" her, and that
13 Clausen was deliberately indifferent to her by failing to treat her medical condition. Dkt. #53
14 at 2-3. Plaintiff has not provided copies of incident reports written by security officials.

15 Plaintiff's allegations would not support a finding that Clausen was deliberately
16 indifferent. Plaintiff has failed to demonstrate that Clausen was directly linked to a
17 constitutional violation or that there are material facts in dispute as to whether Clausen acted
18 with deliberate indifference.

19 More importantly, the evidence reflects that Clausen did not disregard a known risk
20 to Plaintiff's health. In his role as the health administrator, Clausen responded to Plaintiff's
21 grievances and ensured that Plaintiff got appointments to see a medical provider (Dkt. #54,
22 Ex. B, F-G), investigated Plaintiff's complaints concerning medical staff (*id.* Ex. C-D),
23 confirmed that consultant and Medical Review Committee recommendations were forwarded
24 to Central Office appropriately (*id.* Ex. E), and met with Plaintiff to discuss the surgery
25 cancellation by MMC and subsequent medical plan (*id.* Ex. G). This evidence, as well as his
26 vender complaint, preclude any finding of deliberate indifference by Clausen. The Court will
27 grant summary judgment in favor of Defendant Clausen.
28 / / /

### c. Defendant Ribbens.

The Court ordered Defendant Ribbens to answer the allegations that she refused to refer Plaintiff to a doctor after Plaintiff developed an infection from the pins, and refused to provide Plaintiff medical treatment after repeated requests from Plaintiff and her family. Dkt. #3 at 4.[5]

Defendants submit the affidavit of Ribbens, who attested that when conducting one of her "health and welfare" walks in April 2003 she spoke to Plaintiff. Dkt. #47, Ex. D, Ribbens Aff. ¶ 6. Upon seeing Plaintiff's condition, she immediately took Plaintiff to the health unit where she was informed by Hendrix that medical was aware of Plaintiff's condition and was taking care of Plaintiff's medical situation. *Id.* ¶¶ 6-7. Because Ribbens is not a medical provider, she did not solicit any additional information about the care provided to Plaintiff. *Id.* Ribbens stated that she was not aware of Plaintiff's difficulties in getting an operation until she saw one of Plaintiff's grievances in April 2003. Upon receiving the grievance, Ribbens telephoned Hendrix who informed her that Plaintiff would be examined again. *Id.* Ribbens attested that she was never made aware that Hendrix did not actually see Plaintiff. *Id.* ¶ 9. Ribbens further attested that in her position as Deputy Warden, she had no access to inmate medical records nor any authority to modify medical decisions unless there was some conflict with security considerations. *Id.* ¶¶ 11-12. Finally, Ribbens averred that she had no involvement in the provision or denial of medical services to Plaintiff nor did she ever intend to violate Plaintiff's rights regarding her medical care. *Id.* ¶¶ 17-18.

Ribbens' actions do not demonstrate a "purposeful act or failure to respond to [Plaintiff's] pain or possible medical need." *Jett*, 439 F.3d at 1096. As such, Defendants have established the absence of a genuine issue of material fact regarding Ribbens' liability for an Eighth Amendment violation.

---

[5]Contrary to Defendants' contention in a footnote (Dkt. #46 at 8 n. 1), the Court has already determined that Count II sufficiently states a claim for relief against Ribbens (Dkt. #3 at 4).

1  Plaintiff merely asserts in response that Ribbens violated her rights when Ribbens
2  accepted Hendrix's explanation of medical care provided to Plaintiff. Plaintiff argues that
3  when Ribbens saw her wrist "swollen due to infection of pin," Ribbens was obligated to do
4  more. Dkt. #53. But the record establishes that Ribbens' limited involvement with Plaintiff
5  consisted of Ribbens personally escorting Plaintiff to medical in an attempt to ensure that
6  Plaintiff received care. Because Ribbens is not a physician, she was in no position to
7  evaluate whether the care that a medical professional advised her Plaintiff was receiving was
8  adequate.

9  Plaintiff's general allegations that Ribbens was deliberately indifferent will not
10 prevent summary judgment. *Leer*, 844 F.2d at 634. Plaintiff has presented no affidavits or
11 other evidence to support her allegations. Thus, Plaintiff has failed to introduce some
12 "significant probative evidence tending to support" her claim. *Rivera v. Nat'l R.R. Passenger*
13 *Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) (citing *Anderson*, 477 U.S. at 249). The Court
14 will grant summary judgment in favor of Defendant Ribbens.[6]

15 **IV.     Defendant's Request for Attorneys' Fees.**

16 Defendants request that the Court award their taxable costs and attorneys' fees
17 pursuant to 42 U.S.C. § 1988. Under this statute, a district court may award attorney's fees
18 to a prevailing defendant only if the plaintiff's underlying claim is frivolous or without
19 foundation. *Maag v. Wessler*, 993 F.2d 718, 719 (9th Cir. 1993). The Court cannot find that
20 Plaintiff's claims were frivolous or without foundation, and therefore will deny Defendants's
21 request for attorneys' fees.

22 **V.      The Unserved Defendants.**

23 Rule 4(m) provides that "[i]f service of the summons and complaint is not made upon
24 a defendant within 120 days after the filing of the complaint, the court, upon motion or on
25 its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to
26 that defendant." Fed. R. Civ. P. 4(m). Plaintiff filed her complaint on September 17, 2004.

---

[6] Given the summary judgment rulings above, the Court need not address Defendants' arguments regarding qualified immunity and injunctive relief.

1 Dkt. #1. Plaintiff subsequently attempted to serve process on Defendants Hendrix, Sanders,
2 Tuttle, and Hennessy. The summons for each Defendant were returned unexecuted because
3 the Marshal was unable to locate the individuals at the address provided. Dkt. ##4-6, 11.
4 Given that more than two years have elapsed since the filing of Plaintiff's complaint, the
5 Court will dismiss the action against these Defendants pursuant to Rule 4(m).

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Dkt. #45) is **denied**.
2. Defendants' motion for summary judgment (Dkt. #46) is **granted**. The claims against Defendants Dale Palmer, Larry Clausen, and Barbara Ribbens are **dismissed**.
3. Defendants' request for attorneys' fees is **denied**.
4. Plaintiff's motion for trial (Dkt. #53) is **denied**.
5. Plaintiff's action against Defendants Hendrix, Sanders, Tuttle, and Hennessy is **dismissed without prejudice** pursuant to Rule 4(m).

DATED this 7th day of June, 2007.

David G. Campbell
United States District Judge